2010 Ark. 486

**Robert JAMES, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 10–317.**

Supreme Court of Arkansas.

Dec. 9, 2010.

Adam Lee Hopkins, Fayetteville, for appellant.

Dustin McDaniel, Att'y Gen., by: Karen Virginia Wallace, Ass't Att'y Gen., for appellee.

PER CURIAM.

A jury found appellant Robert James guilty of first-degree murder and sentenced him to life imprisonment for killing Tony Rice. The attorney appointed to represent appellant on appeal of the conviction has filed a motion to withdraw as counsel and a no-merit brief. *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and Arkansas Supreme Court Rule 4–3(k) (2010) set the requirements for withdrawal of counsel for a defendant in a criminal case after a notice of appeal has been filed on the basis that an appeal is without merit.[1] In accordance with Rule 4–3(k)(2), our clerk furnished appellant with a copy of the brief. Appellant submitted pro se points for reversal, and the State has responded.

Our jurisdiction is under Arkansas Supreme Court Rule 1–2(a)(2) (2010) because appellant received a sentence of life imprisonment. We find no error in the court's rulings below. We therefore grant counsel's motion to withdraw, and we affirm the conviction.

The evidence presented at trial showed that appellant had separated from his wife, Heather, and that Heather was having an affair with Tony Rice. Heather testified that she had told appellant about the affair, and it was clear that appellant had been aware of the affair for more than a month before shooting Rice. In the months prior to the attack, appellant had contacted two women who had been married to Rice a number of times, asking questions about Rice and indicating that he thought the affair had been ongoing for several months. Appellant had also spoken to Rice, asking his intentions towards Heather's son.

On August 8, 2008, appellant told his son that he was going to get bread and went to the Wal–Mart store where Heather and the victim worked together. The State introduced as evidence video from a security camera that showed appellant arriving at the Wal–Mart parking lot, appellant waiting in the car for some minutes, and Heather and Rice crossing the lot to their trucks after their shift ended. As Heather testified, she and Rice opened the doors to their trucks to let the heat out and stood talking for a brief while. The video documented that appellant then drove his truck from a parking space some distance away to the employee section of the lot and blocked Rice's truck in. Heather testified that appellant got out and began firing. Heather and another witness described how appellant continued firing as he chased Rice when he fled and fired the gun

---

1. Counsel's motion incorrectly referenced Arkansas Supreme Court Rule 4–8 (2010). Although the procedure is similar, that rule is only applicable in involuntary-commitment cases.

a final time standing over Rice after Rice fell to the ground.

Appellant then emptied the spent shells from his gun and left the parking lot. He drove home, told his son that he had shot Tony, and waited on the porch for the police to arrive. The police found the murder weapon in the house and a note from appellant to Heather. The note expressed sorrow that "it ended this way" and thanked her for the time with her son. Four law enforcement officers testified that appellant had made statements to them admitting that he had shot Rice. The medical examiner testified that Rice had some other minor wounds and had died from two gunshot wounds to his face.

Counsel identifies a number of rulings adverse to appellant that he arranges into eight groups for discussion and explains why none provide a meritorious ground for reversal.[2] We address those arguments first, beginning with appellant's motions for directed verdict. Although the rulings on the motions for directed verdict are not addressed by counsel as his first rulings for discussion, double-jeopardy considerations require this court to review directed-verdict arguments before other points are addressed. *Strong v. State*, 372 Ark. 404, 277 S.W.3d 159 (2008).

### I. Appellant's Motions for Directed Verdict

Counsel on appeal asserts that appellant's motions for directed verdict were properly denied by the trial court.[3] We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Marcyniuk v. State*, 2010 Ark. 257, 373 S.W.3d 243. Our standard of review for a sufficiency challenge is well settled; we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

Appellant moved for a directed verdict on the basis that the State did not present evidence sufficient to establish that appellant had the purpose necessary for the charge and that the evidence only showed that appellant had "lost it." The requisite intent for first-degree murder is purposefully. *Brown v. State*, 374 Ark. 324, 287 S.W.3d 587 (2008); Ark.Code

---

**2.** Counsel did not include as adverse rulings the court's response to two objections made by the State during cross-examination of Heather's son, Michael James. The objections are included in the abstract and could arguably be construed as adverse. We do not order rebriefing, however, because the circumstances here are unlike those in *Sartin v. State*, 2010 Ark. 16, 362 S.W.3d 877 (per curiam). Here, the abstract and the broader scope of our required review of the record are sufficient to confirm that the rulings were not prejudicial, even if adverse. This court will not reverse an evidentiary ruling absent a showing of prejudice. *McKeever v. State*, 367 Ark. 374, 240 S.W.3d 583 (2006). In the first ruling, the trial court required a question directed toward the reason Michael stopped

visiting the defendant in jail to be reworded. Counsel was able to obtain the information he sought with the reworded question. The court sustained the second objection after counsel had withdrawn the question.

**3.** Appellate counsel's argument points to only two motions for directed verdict. The abstract and record, however, show that trial counsel made a third motion, on the same basis as the previous two motions, after the State presented rebuttal testimony. The argument was preserved for appeal in that trial counsel renewed the motion at the close of evidence. *See Christian v. State*, 318 Ark. 813, 889 S.W.2d 717 (1994); *see also Davis v. State*, 2009 Ark. 478, 348 S.W.3d 553.

Ann. § 5–10–102(a)(2) (Repl.2006). "A person acts purposely ... when it is the person's conscious object to engage in conduct of that nature or to cause the result." Ark.Code Ann. § 5–2–202(1) (Repl.2006). A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. Robinson v. State, 353 Ark. 372, 108 S.W.3d 622 (2003). In cases of first-degree murder, intent may be inferred from the type of weapon used; the manner of its use; and the nature, extent, and location of the wounds. Leaks v. State, 345 Ark. 182, 45 S.W.3d 363 (2001).

In Leaks, the appellant also presented an argument that evidence of the defendant's intense emotion at the time of the killing was "provocation" that prevented any proof of the necessary intent. As in Leaks, we do not consider evidence of such emotion because we only consider the evidence that supports the guilty verdict.[4] Id. at 184, 45 S.W.3d at 364–65. Here, there was evidence that appellant had prior knowledge of the affair and investigated the victim's background; that appellant waited in his truck after arriving at the store until Heather and Rice were standing by their vehicles; and that appellant fired multiple shots, chased his victim, and stood over him to deliver a final shot to the head. Under these circumstances, substantial evidence exists to support the conviction.

II. *State's Motion in Limine to Exclude Reference to the Extramarital Affair*

■ The State filed a motion in limine seeking an order from the court that any reference to the affair between Heather and the victim should be excluded. The motion asserted that appellant had raised no defense that would make the information relevant and that the probative value of the evidence would be outweighed by its prejudice. During the hearing on the motion, the State argued that appellant had not raised justification or any other defense that would cause the evidence of the affair to be relevant. Appellant in turn asserted that his defense was that the State would not show the frame of mind required for first-degree murder, and evidence of an affair was therefore relevant. Counsel pointed to references to the affair in statements by the witnesses.

The court's ruling was generally favorable to the defense, finding that the State had been given adequate notice of the defense and that the defense would be allowed to fully develop that defense, including reference to the ongoing affair, during presentation of its case. The only restriction the court placed on the defense's ability to elicit the information was that it would be limited during the State's case to the scope on direct.

■ Although the trial court should afford wide latitude in the use of cross-examination in bringing the facts to the jury, cross is limited to the subject matter of the direct examination and matters affecting the credibility of the witness. *See* Holloway v. State, 363 Ark. 254, 213 S.W.3d 633 (2005); Ark. R. Evid. 611(b) (2010). Moreover, trial counsel agreed that the evidence could only be introduced in the State's case if the State opened the door, and he stated that his only issue with the motion was whether the evidence could

---

4. Although trial counsel referenced testimony from the psychologist who examined appellant in his argument to the trial court, there was no evidence presented concerning a defense of insanity. *See Davis v. State,* 368 Ark. 401, 246 S.W.3d 862 (2007) (expert-witness testimony that was contradictory concerning the defendant's mental defect and a diagnosis of dissociative disorder was an issue for the jury to resolve).

come in. A party cannot complain on appeal about relief to which he agreed or sought. *Holloway*, 363 Ark. at 269, 213 S.W.3d at 643.[5]

### |₇III. *Request to Excuse Jurors for Cause*

 The defense asked the court to excuse two jurors for cause. The court declined the requests. Each of the two jurors was excused by one of the parties through a peremptory strike, and neither sat on the jury panel. The loss of peremptory challenges cannot be reviewed on appeal. *Jackson v. State*, 375 Ark. 321, 290 S.W.3d 574 (2009). An argument as to a venire person who was struck through the exercise of a peremptory challenge by either party is not a claim that may be raised on appeal. *See id.*

### IV. *Objections to Counsel's Cross-examination of Sandra Rice*

 Sandra Rice testified that she had been married to Tony Rice and had divorced him that April. She said that appellant had approached her at work on two occasions to talk about the affair between Tony and Heather. She responded by telling appellant that she was divorced and that it was not her business. She testified that appellant told her that Tony and Heather had been having an affair since December. Defense counsel questioned Ms. Rice on cross-examination, asking her if she had learned after her divorce that Tony and Heather were having an affair. The State objected to the question on the basis of hearsay, and the court sustained the objection. Counsel then asked if Ms. Rice believed at the time she was divorced

that Tony was having an affair with Heather. Ms. Rice responded, "No." The State objected again, asserting that the question called for speculation by the witness. The court sustained the objection.

|₈Appellate counsel argues that the court's rulings were correct that the questions would have elicited hearsay or speculative information. We note that the objection to the second question was late, coming after the witness responded. Whether the objections were properly sustained or not, we conclude that neither question was relevant to appellant's defense, and appellant was not prejudiced by any exclusion of the testimony.

 Evidence which is not relevant is not admissible. Ark. R. Evid. 402 (2010). Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Evid. 402. Ms. Rice had testified that appellant said he believed that his wife and the victim had been having an affair since December. Appellant's state of mind had already been established; questions of Ms. Rice's state of mind, or whether appellant's beliefs were accurate, were of no consequence to appellant's defense. This court will not reverse the circuit court's ruling on the admission of evidence absent an abuse of discretion and a showing of prejudice. *Eubanks v. State*, 2009 Ark. 170, 303 S.W.3d 450 (2009). Neither ruling provided a meritorious ground for reversal.

---

5. The State also made an oral motion in limine before the defense called Bonnie Balasco that was to exclude hearsay and opinion testimony. There was a series of objections during Ms. Balasco's testimony relating to the affair, particularly as to when it began, during

both direct and cross-examination. Appellate counsel has provided no discussion of those rulings, but we note that in each case, to the extent that the court provided a ruling, trial counsel indicated agreement with any adverse ruling.

## V. Appellant's Objections to Admission of Handwritten Note

■ Police Chief John O'Brien testified that Special Agent Mendenhall had photographed and later collected appellant's handwritten note to Heather. At that point, trial counsel raised objections to the admission of the note, asserting that no photographs or reproductions of the note, rather than the handwritten note itself, should be admitted, and protesting that he had not been provided a completely legible copy of the note. The court granted counsel's objection concerning the best evidence rule and found that appellant had notice of the note and should be provided with a copy to read before the note was to be introduced through Officer Mendenhall's testimony. When the note was admitted during Officer Mendenhall's testimony, the court inquired and counsel responded that there was no objection.

■ The court's ruling on best evidence was not adverse. Appellate counsel asserts that the court correctly ruled that appellant had notice of the contents of the note. In any event, appellant waived any further objection as to the adequacy of notice concerning the note when he failed to renew his objection before the note was offered for admission into evidence. Where the court's earlier ruling is preliminary, defense counsel must object when the evidence is offered for admission in order to preserve an issue for appeal. *See Ward v. State,* 370 Ark. 398, 260 S.W.3d 292 (2007); *Baker v. State,* 334 Ark. 330, 974 S.W.2d 474 (1998).

## VI. Objection to Rebuttal Testimony by Bonnie Balasco

■ The defense called Bonnie Balasco, Heather's stepmother, to testify concerning appellant's knowledge of the affair, how the affair changed appellant's behavior, and how she became afraid of his unpredictable behavior. During the State's cross-examination, defense counsel objected to questions to Ms. Balasco about appellant's previous marriages. The court sustained the objection, ruling that the questions went beyond the scope of the direct examination but indicating that the State could recall her as a witness.

After the defense rested, the State did call Ms. Balasco for rebuttal testimony concerning what appellant told her about his second marriage and that the marriage had ended because his second wife had an affair. The defense objected to the State's calling Bonnie Balasco as a rebuttal witness on the basis that she could not rebut her own testimony. The trial court overruled the defense objection.

Appellate counsel points out that trial counsel did not object to the comments about rebuttal that followed the court's ruling during Ms. Balasco's cross-examination. But, whether the comments were a ruling that called for an objection or not, Ms. Balasco was a proper rebuttal witness, and the objection did not have merit.

■ A rebuttal witness is proper if the evidence to be elicited is responsive to new matters raised by the defense; that evidence may overlap with the evidence presented in the case-in-chief. *See Cluck v. State,* 365 Ark. 166, 226 S.W.3d 780 (2006). Here, appellant raised the issue in his case that he had become so emotional as a result of his wife's affair that he had "lost it." In response to that evidence, the State could present evidence that appellant had previously had a similar experience, but had not lost control and committed an act of violence. The fact that the trial court might have used its discretion under Rule 611 to allow the testimony during cross-examination of the witness during the defense case does not disqualify the witness from testifying as a rebuttal wit-

ness. The issue in determining whether a rebuttal witness is proper concerns whether the evidence to be presented is proper, not whether the witness has previously testified.

### VII. Objection to Question Concerning Appellant's Prior Marriages

Trial counsel objected again to Ms. Balasco's testimony about appellant's previous marriages on rebuttal on the basis that the testimony was not relevant because the marriages were remote in time and had nothing to do with the situation that preceded the shooting. As discussed, the evidence was relevant, and the trial court did not abuse its discretion in overruling the objection.

### VIII. State's Objection to Closing Argument

The State objected when the defense asked the jury during closing remarks to put itself in appellant's position in considering how the shooting occurred. The State based its objection on the "golden rule." The trial court instructed the jury that it was not to place itself in the position of the defendant, but repeated the portion of the manslaughter instruction that called for the jury to determine the reasonableness of the excuse from the viewpoint of a person in the defendant's situation, under the circumstances as he believed them to be. The defense indicated that it was satisfied with the admonishment.

We note that a "golden rule" argument is one where the jury is implored to put themselves in the position of the victim. *Lee v. State,* 340 Ark. 504, 11 S.W.3d 553 (2000). Even if the objection was incorrectly sustained, as appellate counsel points out, the defense indicated its satisfaction with the admonishment given. Appellant could not mount a meritori-

ous appeal concerning an admonishment to which he agreed. *See Holloway,* 363 Ark. at 269, 213 S.W.3d at 643.

### Pro Se Points for Reversal

Appellant submitted ten pro se points for reversal. Briefly, those points are summarized as follows: (1) trial counsel should have requested a change of venue and did not; (2) the jury panel was selected only from a portion of the county; (3) the motion in limine should not have been allowed; (4) the video that was admitted had been tampered with; (5) the handwritten note had been written months earlier, and appellant had requested that counsel ask Heather if she had seen it; (6) one of the jurors knew two witnesses and the victim; (7) some of the statements made by the prosecution were inconsistent with the evidence; (8) parts of Heather's testimony were inconsistent with her previous statement; (9) appellant has been a law-abiding, tax-paying citizen for sixty years; (10) it was a mistake that, on his attorney's advice, appellant did not testify.

The first, fifth, and last points assert ineffective assistance of counsel, and a number of the other points may be construed to some extent as an attempt to assert the same. A claim of ineffective assistance of counsel is appropriate on direct appeal only when it is raised before the trial court and the facts and circumstances surrounding the claim have been fully developed at the trial level. *Rounsaville v. State,* 374 Ark. 356, 288 S.W.3d 213 (2008). No claim of ineffective assistance was raised below. Those issues do not present meritorious points for appeal.

With the exception of the third point, which was addressed above because it was discussed in counsel's brief, none of the remaining points was preserved for

appeal because the issues were not raised in the trial court. Issues are waived that are raised for the first time on appeal, and we do not address any argument, including a constitutional argument, that was not raised below. *Taylor v. State,* 2010 Ark. 372, 372 S.W.3d 769. Moreover, as the State notes in its response, appellant provides no citation to authority or persuasive argument to support his arguments. This court need not address an argument unsupported by citation to authority or convincing argument. *Id.*

*Compliance with Rule 4–3(i)*

In compliance with Rule 4–3(i), the State has provided a supplemental abstract and discussed one further point, asserting that while the point potentially may appear to involve prejudicial error, it does not. This additional point concerns the court's response to a note from the jury during deliberations that inquired as to the defendant's age and asked to see the video from the store parking lot again. The court wrote a note to the jurors stating, "The evidence has been submitted to you. You shall refer to the exhibits and testimony in relation to your question. The video will be replayed to you shortly." The jury was brought back into the court room, which was then cleared of everyone else with the exception of the court reporter, who was to push the button to play the dvd for the jury. The defense agreed that the procedure was satisfactory.

In this case, the trial court brought the jury back into the courtroom and gave a written response through a note that was included in the record. Because the jury was returned to the courtroom and the communication with the jury was documented in the record, there was compliance with Arkansas Code Annotated § 16–89–125 (Repl.2005). *See Davlin v. State,* 313 Ark. 218, 853 S.W.2d 882 (1993). There was no prejudice to appellant in the replaying of the requested video clip for the jury. *See Jackson v. State,* 2009 Ark. 336, 321 S.W.3d 260. Moreover, counsel agreed to the procedure for handling the jury's request and waived any failure to strictly adhere to the requirements of the statute. *Davlin,* 313 Ark. at 221, 853 S.W.2d at 884–85.

Finally, the record in this case has been examined in compliance with Rule 4–3(i) for objections, motions, and requests made by either party that were decided adversely to appellant. *See Strong,* 372 Ark. at 419, 277 S.W.3d at 170–71 (citing *Doss v. State,* 351 Ark. 667, 97 S.W.3d 413 (2003)).[6] Some rulings, as indicated in this opinion, were not discussed by counsel, but we find no prejudicial error and affirm. Counsel's motion to withdraw is granted.

Affirmed; motion granted.

---

**6.** Both cases cite the rule prior to the addition of subsection (f) and relettering of the relevant provision from subsection (h) to (i).